IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DRAPER FRANK WOODYARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0566-WS-N |
| | ) |
| **ALABAMA DEPARTMENT OF** | ) |
| **CORRECTIONS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the remaining defendant's motion for summary judgment. (Doc. 106). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 106-07, 111, 116), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion for summary judgment is due to be granted.

## BACKGROUND

According to the amended complaint, (Docs. 16-17),[1] the plaintiff was repeatedly stabbed and cut by another inmate ("Anderson"), resulting in serious injuries, including the near amputation of two digits. Shortly before the attack, the plaintiff notified defendant David Leggett, a correctional officer, of threats made by Anderson, but Leggett took no steps in response to this information. The defendant was nearby when the attack occurred but did nothing to stop it.

---

[1] The plaintiff later filed duplicates of these documents, (Docs. 18-19), which were stricken on order of the Magistrate Judge. (Doc. 20). The amended complaint is thus the governing pleading. (Doc. 67 at 8 n.5).

The plaintiff asserts a single claim of deliberate indifference by failure to protect him from inmate violence. The defendant argues the plaintiff cannot prove a constitutional violation and that he is entitled to qualified immunity in any event.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if

any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

---

[2] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

**I. Evidence.**

Because the evidence and inferences therefrom must be viewed most favorably to the nonmovant, in assessing the defendant's motion the plaintiff's version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material relied on by the defendant and not contrary to the plaintiff's proffered evidence.

On July 24, 2012, the plaintiff and Anderson were assigned to Dorm A, an open dorm housing 114 inmates. The defendant was the only correctional officer assigned to Dorm A at the time of the attack. (Doc. 106-1 at 2; Doc. 106-2 at 1; Doc. 111-3 at 3).

On July 23, 2012, Anderson asked the plaintiff for certain food items as a loan, and the plaintiff complied. In the outside yard the next morning, Anderson (who was drunk) asked for "more money."[3] When the plaintiff refused, Anderson became agitated and shoved the plaintiff. When the plaintiff shoved back, Anderson became more upset. Anderson told the plaintiff he would stab him that evening. (Doc. 111-1 at 4-6, 8-10, 18).

Within five or ten minutes, yard call was over and inmates began moving back to their dorms. Before Anderson returned to Dorm A, the plaintiff returned and approached the defendant. The plaintiff said he needed to report a threat to the shift supervisor because "that dude just threatened my life." (Doc. 111-1 at 10, 14-15, 19; Doc. 111-3 at 12-13). The defendant asked who, and the plaintiff identified Anderson, saying, "Lawrence Anderson said he was going to stab me." (Doc. 111-1 at 10, 21-22). The defendant replied, "He's probably drunk," and began laughing. (*Id*. at 19). The plaintiff responded, "Man, I'm serious," and that he felt the threat was sincere. (*Id*. at 19, 22). The plaintiff repeated that he (the plaintiff) needed to go to the shift manager's office to report the threat, and that he needed to go now. (*Id*. at 18-19). The defendant said he could not let the plaintiff

---

[3] According to the defendant, "money" is prison slang for food items. (Doc. 106 at 3).

4

out because yard call was over, the gate was closed, and there was "no movement." (*Id*. at 19-20). The plaintiff asked the defendant if he would call a shift manager, and the defendant said, "No, you just got to wait" until the next movement. (*Id*. at 19; Doc. 106-1 at 13). The plaintiff went to his bunk to wait. He had taken hypertension medication that caused him to nod off at some point. (*Id*. at 14, 22; Doc. 111-1 at 20).

When Anderson returned to the dorm, the defendant was standing at the entry door, making sure that only Dorm A residents came in. Anderson walked in without the defendant stopping him or addressing him. (Doc. 111-4 at 3, 11). Anderson then retrieved a knife from his boot by his bed. (*Id*. at 4). About 45 to 60 minutes after he returned to Dorm A, the plaintiff awakened when he was first stabbed by Anderson. (Doc. 111-1 at 16, 23-25). The plaintiff got up and started fighting Anderson, while yelling the defendant's name more than once. (*Id*. at 26). Anderson stabbed the plaintiff eight or nine times before one or two inmates pulled Anderson away from the plaintiff. (Doc. 111-1 at 27, 30-31; Doc. 111-3 at 8). Correctional officers arrived at about this time. (*Id*. at 6).

At the time of the attack, the defendant was standing at his post, which was within ten feet of the plaintiff's bed. (Doc. 106-1 at 3).[4] The defendant heard someone yell, looked up from his paperwork, and saw the plaintiff and Anderson fall over a bed. He immediately called a Code Blue, which signifies inmate fighting and which summons immediate assistance. (Doc. 106-3 at 5-6). Within 20 seconds, two correctional officers entered the dorm in response to his call. (*Id*. at 7; Doc. 106-4 at 3; Doc. 106-5 at 2). When the other correctional officers arrived, the defendant approached the combatants and told them to stop fighting, and they complied. (Doc. 106-3 at 6-7).

---

[4] The defendant testified that the distance was more like 20 feet, but "[w]e are required to credit [the plaintiff's] version of the facts, even if other evidence in the record is more favorable to him …." *Valderrama v. Rousseau*, 780 F.3d 1108, 1115 (11th Cir. 2015); *accord Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc).

The defendant did not intervene in the fight before back-up arrived because there was a danger the fight was designed to lure him to where he could be attacked, especially since many inmates were gathered around the combatants. (Doc. 106-3 at 6). The proper protocol in inmate fighting situations is to radio for back-up and wait until it arrives. (Doc. 106-5 at 2).

## II. Failure to Protect.

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden*, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal quotes omitted). "In particular, under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. (internal quotes omitted).

### A. Failure to Prevent the Attack.

The plaintiff complains that, before Anderson attacked him, the defendant: (1) did not permit the plaintiff to leave the dorm to report the threat to the shift supervisor; (2) refused to radio the shift supervisor; and (3) allowed Anderson to enter and roam the dorm "unmolested." (Doc. 111 at 8).

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (internal quotes omitted). "To survive summary judgment on a deliberate indifference failure-to-protect claim, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation." *Id*. (internal quotes omitted).

The defendant does not deny that a substantial risk of serious harm (Anderson stabbing the plaintiff) existed.[5] Instead, the defendant identifies his

---

[5] *See, e.g., Rodriguez v. Secretary for Department of Corrections*, 508 F.3d 611, 617 n.2 (11th Cir. 2007) (death threats represented a substantial risk of serious harm).

"grounds for summary judgment" as that he did not "subjectively appreciate[e] the immediacy and seriousness of the risk," that his "response was reasonable," and that "there is no evidence [he] caused" the plaintiff's injuries. (Doc. 106 at 8).

"The second element – the defendant's deliberate indifference to that risk – has two components: one subjective and one objective." *Caldwell*, 748 F.3d at 1099. "To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) knew that an inmate faced a substantial risk of serious harm." *Id*. (internal quotes omitted). "[T]he defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1099-1100 (internal quotes omitted). "The known risk of injury must be a strong likelihood, rather than a mere possibility …." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotes omitted); *accord Brooks v. Warden*, ___ F.3d ___, 2015 WL 5157339 at *4 (11th Cir. 2015).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Caldwell*, 748 F.3d at 1100 (emphasis and internal quotes omitted). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 1101 (internal quotes omitted).

As noted, the defendant denies being subjectively aware that Anderson posed an *immediate* threat to stab the plaintiff. *See Brown*, 894 F.2d at 1537 (plaintiff failed to offer sufficient evidence the defendants were or should have been aware of a strong likelihood of an assault where, inter alia, he did not tell them a fight was imminent). For the plaintiff to survive summary judgment, he must present evidence from which a reasonable jury could find that the defendant actually inferred from the circumstances that there was a strong likelihood Anderson would stab the plaintiff, and not just at some vague future time but *now*,

7

before the prison schedule next allowed for prisoner movement.  As discussed below, he has not done so.

Under the plaintiff's version of the facts, he told the defendant that Anderson had threatened to stab him, that Anderson had threatened his life, and that he (the plaintiff) felt the threat was sincere.  But the plaintiff did not provide the defendant any information suggesting that the threat would be carried out in the next few minutes.  The plaintiff did not tell the defendant that Anderson indicated he would act immediately,[6] did not tell the defendant that Anderson had long had it in for him,[7] did not tell the defendant that Anderson already possessed a weapon, did not tell the defendant that Anderson was so furious he lacked all self-restraint, and did not tell the defendant that Anderson was likely to act even with the defendant standing only a few feet away.  Nor has the plaintiff pointed to any evidence that Anderson had a known history of violence against other inmates, a hair-trigger temper, a propensity for irrational behavior, or any other characteristic that might contribute to an awareness that he was likely to stab a fellow inmate at any moment, in broad daylight and in full view of a correctional officer.[8]  Moreover, the plaintiff did not respond to the defendant's instruction to "wait" for the next movement by pleading his case, insisting his life was in

---

[6] Nor could he honestly have done so, since he testified that Anderson said he would stab him "this evening" or "tonight."  (Doc. 111-1 at 10-12).  The stabbing occurred a few minutes after noon.  (Doc. 106-2 at 5).

[7] Nor could he honestly have done so, since there had never been fights or angry words between him and Anderson before the morning of the stabbing.  (Doc. 106-1 at 4).

[8] "In any event, a general awareness of an inmate's propensity for being violent does not satisfy the subjective awareness requirement."  *Oliver v. Harden*, 587 Fed. Appx. 618, 620 (11th Cir. 2014).  Thus, a defendant's knowledge that the attacker was a "problem inmate with a well-documented history of prison disobedience [who] had been prone to violence [and] acted crazy" was legally insufficient:  "[T]here must be much more than mere awareness of [the attacker's] generally problematic nature."  *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

8

immediate danger, or refusing to leave the defendant's side; instead, he simply returned to his bed and fell asleep.[9]

The icing on the cake is Anderson's drunkenness. The plaintiff admits Anderson was an inveterate drunk, (Doc. 106-1 at 10), and yet, as noted above, there is no evidence that Anderson had ever exhibited violent tendencies or even voiced violent aspirations; that is, alcohol did not make Anderson more likely to carry out his threat. On the contrary, and as the plaintiff admits, the defendant "thought that was just the alcohol talking," (*id*. at 12), which means he did not subjectively believe Anderson was likely to attack the plaintiff in the next few minutes.[10]

The plaintiff offers no direct response to these points, all raised by the defendant. Instead, he argues that a strong likelihood of an immediate attack was obvious (so as to permit an inference the defendant subjectively recognized it) based on: (1) the defendant's history of having witnessed inmate fights; (2) the recency of Anderson's threat; and (3) the fact that Anderson was one of the plaintiff's 113 roommates. (Doc. 111 at 7).

The scope of the defendant's experience is vague. The defendant testified he has "seen inmate fights." (Doc. 111-2 at 4). He then said, "Yes," when asked, "Any ones with knives [or "any kind of cutting instruments"]?" All this evidence clearly shows is that the defendant has witnessed two inmate fights in his career, one of which involved a cutting instrument. Nothing in his testimony suggests that prisoner stabbings are common or that threats of violence with weapons are usually acted upon immediately and directly in front of correctional officers (or that the defendant so believed). At any rate, a plaintiff "must show more than a

---

[9] The Court understands this was due to medication the plaintiff had consumed, but there is no evidence the defendant knew that. From his perspective, the plaintiff's nap would reflect serenity and certainly not fear.

[10] Left unexplained is why the prison so generously tolerated known, repetitive prisoner drunkenness, but that is not an issue raised by the plaintiff.

9

generalized awareness of risk," *Caldwell*, 748 F.3d at 1101, (internal quotes omitted), which is the most the defendant's experience could reflect.

The recency of Anderson's threat cannot alone make it obvious that he would immediately carry it out. Threats (especially by drunks) are often hollow and usually require time, planning and favorable circumstances to execute. Sharing a dorm with the plaintiff gave Anderson potential access to his victim, but it did not show he already possessed the means to stab him or the will to do so under the defendant's nose.

This is not a case where a plaintiff was left alone in a cell with an inmate likely to commit violence against him. In such a case, a strong likelihood of *immediate* violence exists, and a defendant with awareness of the facts may be assumed to subjectively appreciate the immediacy of the risk.[11] But when, as here, the circumstances (including the attacker's benign history, his apparent lack of a weapon, his typical drunkenness when making his threat, the presence of many witnesses, the defendant's proximity, and the plaintiff's nonchalance) all reflect that any danger lies in the future and not the present, the plaintiff cannot (absent the defendant's admission) create a genuine issue as to whether the defendant subjectively appreciated there was a strong likelihood the plaintiff would be stabbed momentarily. Since the defendant has made no such admission, the plaintiff has failed to meet his burden on motion for summary judgment.[12]

---

[11] *See, e.g., Caldwell*, 748 F.3d at 1094-95 (plaintiff placed back in cell with inmate, who attacked within a few hours).

[12] The Court previously denied the defendant summary judgment as to this claim. (Doc. 67 at 22-23; Doc. 71). At that time, however, the plaintiff relied on an affidavit from Anderson for the proposition that he "walked by the officer with the weapon out," and that "the officer saw the knife and looked the other way." (Doc. 42 at 18; Doc. 67 at 16). Such a state of affairs would of course support a finding that the defendant subjectively realized there was a strong likelihood the plaintiff was about to be stabbed.

In his deposition, Anderson denied that he walked by the defendant with his weapon visible, (Doc. 106-6 at 5), and the plaintiff does not rely on Anderson's affidavit.

### B.  Failure to Stop the Attack.

In his complaint, the plaintiff alleges that, once Anderson attacked him, the defendant "did nothing in my defense" but only "watched as I was stabbed repeatedly." (Doc. 16 at 4).  The plaintiff in his opposition to summary judgment completely ignores this claim.  However, "summary judgment cannot be granted by default." Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments to Rule 56(e)).  "[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004).  On the other hand, "[t]he district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id*.

There is no question but that, when he observed Anderson attacking the plaintiff, the defendant was subjectively aware of a strong likelihood of serious harm to the plaintiff.  The subjective component of the second (deliberate indifference) element of the plaintiff's claim is thus satisfied.  However, "[t]o satisfy the objective component, a plaintiff must produce evidence that the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Caldwell*, 748 F.3d at 1099 (internal quotes omitted).

The defendant has shown that he followed proper protocol by radioing for assistance and not becoming involved until assistance arrived.  The explanation is facially sound, and it shows that the defendant's response to the attack was objectively reasonable.  By his silence, the plaintiff has pointed out no flaw in the defendant's evidence or argument.  The plaintiff has thus failed to meet his burden on motion for summary judgment.

---

The factual scenario on the instant motion is thus materially altered from that presented on the previous motion, and the difference is fatal to the plaintiff's claim.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted**.[13]  Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 28th day of September, 2015.

s/ WILLIAM H. STEELE<br>CHIEF UNITED STATES DISTRICT JUDGE

---

[13] Because the plaintiff cannot establish a constitutional violation, the Court declines to address separately the defendant's qualified immunity argument.